# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| **AMY SIMMONS,** ] | |
| ] | |
| **Plaintiff,** ] | |
| ] | |
| v. ] | 1:20-cv-01571-ACA |
| ] | |
| **METROPOLITAN GROUP PROPERTY** ] | |
| **AND CASUALTY INSURANCE** ] | |
| **COMPANY,** ] | |
| ] | |
| **Defendant.** ] | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Amy Simmons filed for chapter 13 bankruptcy, representing to the bankruptcy court and her creditors that her personal property was worth only $3,300. Over a year later, her house burned down and she filed an insurance claim with Defendant Metropolitan Group Property & Casualty Insurance Company ("Metropolitan"), alleging that her personal property was worth $180,411. Metropolitan denied Ms. Simmons' claim on the ground that she had misrepresented a material fact in making her claim. Ms. Simmons then filed suit against Metropolitan, alleging breach of contract and bad faith denial of her insurance claim. Metropolitan now moves for summary judgment on both claims.

Because a jury must decide whether Ms. Simmons made material misrepresentations with an intent to deceive, the court **DENIES** the motion for

summary judgment Ms. Simmons' breach of contract claim. But because the undisputed evidence establishes that Metropolitan had an arguable basis for denying Ms. Simmons' claim, the court **GRANTS** the motion for summary judgment on the bad faith claim and **WILL ENTER SUMMARY JUDGMENT** in favor of Metropolitan and against Ms. Simmons on that claim.

I.   BACKGROUND

In reviewing a motion for summary judgment, the court "draw[s] all inferences and review[s] all evidence in the light most favorable to the non-moving party." *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1318 (11th Cir. 2012) (quotation marks omitted).

In July 2018, Ms. Simmons filed a voluntary petition for chapter 13 bankruptcy.[1] (Doc. 22-1). Under chapter 13, a debtor's "debts [are] discounted and repaid." *De Leon v. Comcar Indus., Inc.*, 321 F.3d 1289, 1291 (11th Cir. 2003); *see* 11 U.S.C. § 1322. One of the questions asked in the petition is the "current value" of the debtor's personal and household items. (Doc. 22-1 at 11). The bankruptcy petition does not define "current value" (*see, e.g.*, Doc. 22-1 at 12), but the bankruptcy court's instructions for filling out Schedule A/B states "[c]urrent value is sometimes called *fair market value* and, for this form, is the fair market value as

---

[1] The parties dispute at some length the terms of Ms. Simmons' pay plan, but neither party has submitted any evidence about those terms. Because the court has determined that the type of plan confirmed by the bankruptcy court does not affect the outcome of this motion, the court will not address that factual dispute any further.

of the date of the filing of the petition.  *Current value* is how much the property is worth, which may be more or less than when you purchased the property." *See* Instructions, Bankruptcy Forms for Individuals, https://www.uscourts.gov/forms/individual-debtors/schedule-ab-property-individuals (last visited January 3, 2022) (emphases in original).  Ms. Simmons reported the current value of her personal property as $3,300, composed of $300 in clothing and $3,000 for a "living room suite, 3 bedroom suites, 2 TVs, desktop computer, table/chairs, microwave, stove, refrigerator, washer, dryer, pots, pans, dishes, silverware." (*Id.* at 11–12) (cleaned up).  Ms. Simmons later admitted that this amount was "not right" and was "a mistake," but conceded that she bore the ultimate responsibility for its erroneousness because she had reviewed and signed the petition.  (Doc. 22-9 at 34; *see also id.* at 38).  Ms. Simmons' petition also listed $902.69 in disposable income per month.  (Doc. 22-1 at 36, 39).

Shortly after filing for bankruptcy, Ms. Simmons began dating Glen Davis. (Doc. 22-9 at 12).  Mr. Davis regularly bought things for Ms. Simmons and her sons, including furniture, clothing, shoes, perfume, and accessories.  (*Id.* at 11–19, 36; Doc. 25-1 at 16).  He also gave Ms. Simmons money on occasion.  (Doc. 22-9 at 36).  Mr. Davis testified that he spent more than $50,000 on Ms. Simmons and her children in 2018 and 2019.  (Doc. 25-1 at 15).

On November 24, 2019, a fire destroyed Ms. Simmons' house. (Doc. 1-1 at 8 ¶ 9; Doc. 23 at 4 ¶ 5). Ms. Simmons had a homeowners insurance policy issued by Metropolitan that covered, among other things, the loss of her dwelling and personal property. (Doc. 1-1 at 10; Doc. 22-2). For loss of personal property, the policy covered replacement cost, defined as "the full cost of repair or replacement, less the applicable deductible, without deduction for depreciation." (Doc. 22-2 at 26; Doc. 25-2 at 2). But for any specific types of personal property excepted from that coverage, or if the insured decided not to repair, restore, or replace damaged personal property, the policy covered "actual cash value," defined as "the amount which it would cost to repair or replace covered property with material of like kind and quality, less allowance for physical deterioration and depreciation including obsolescence." (Doc. 22-2 at 7, 26).

The policy conditioned coverage on the insured not making any misrepresentations affecting any matter relating to the loss:

> If any person defined as you conceals or misrepresents any material fact or circumstance or makes any material false statement or engages in fraudulent conduct affecting any matter relating to this insurance or any loss for which coverage is sought, whether before or after a loss, no coverage is provided under this policy to any person defined as you.

(Doc. 22-2 at 40 ¶ 2) (emphases omitted). The policy also provided that "[y]our bankruptcy . . . will not relieve us of any obligation under this policy." (*Id.* at 40 ¶ 7) (emphases omitted).

4

After the fire, Ms. Simmons promptly filed a claim with Metropolitan. (Doc. 1-1 at 7 ¶ 5; Doc. 23 at 4 ¶ 6). The parties have not presented any evidence about her initial claim, but at some point after she filed the claim, Metropolitan brought to her attention a discrepancy between the claim and her bankruptcy petition's valuation of her personal property. (*See* Doc. 22-9 at 34). As a result, on January 17, 2020, Ms. Simmons amended her bankruptcy petition to state that the "current value" of her personal property was $33,600, the value of her clothing was $300, and the value of her jewelry was $22,000, for a total "current value" of $55,900. (Doc. 22-10 at 4, 9). Her amended petition included an itemized list of personal property, including two bedroom suites, televisions, a computer, microwave, various appliances, and furniture. (*Id.* at 11).

Several days later, on January 22, 2020, Ms. Simmons submitted to Metropolitan a proof of loss form stating that her claim for her house was $249,800 and her claim for her personal property was "TBD."[2] (Doc. 22-9 at 89). In early

---

[2] The policy requires an insured making a claim to file a signed and sworn proof of loss form. (Doc. 22-2 at 27). The proof of loss form asks for, among other things, the cost to repair or replace the lost or damaged property, the actual cash value of the loss, and the total amount claimed. (Doc. 22-4 at 5). Metropolitan's instructions for how to fill out the form indicate that the insured should give the "cost to repair or replace the lost or damaged property" and "actual cash value" for both real and personal property. (Doc. 22-4 at 3). Nevertheless, both Ms. Simmons and Metropolitan have treated the "cost to repair or replace" as relating solely to the house and "actual cash value" as relating solely to the personal property, even though Ms. Simmons' policy provided for the replacement cost of damaged personal property. (*See, e.g.*, doc. 22-9 at 89 (listing $249,800 for the cost to repair but "TBD" for the actual cash value); doc. 22-7 at 2 (stating Metropolitan's understanding that Ms. Simmons was "making a claim for $249,800 on the dwelling and TBD for the contents"; doc. 22-2 at 26; doc. 25-2 at 2). In other words, both parties

February, Metropolitan sent Ms. Simmons a reservation of rights letter (doc. 22-3) and asked her to submit a new proof of loss form (doc. 22-4). Metropolitan explained to Ms. Simmons that it needed to know what dollar amount she was seeking for her personal property. (*Id.* at 3).

On February 17, 2020, Ms. Simmons submitted a second proof of loss form stating that her claim for the house was $249,800 and her claim for her personal property was $180,411, for a total claim of $430,211. (Doc. 22-5 at 2; Doc. 22-9 at 21). At some point, Ms. Simmons also made a "contents inventory" of personal property lost in the fire, listing the "cost" of each item. (Doc. 22-9 at 7, 98–107). The contents inventory listed $184,902 worth of personal property.[3] (*See id.* at 98–107). Most of the contents inventory included items acquired in 2018 and 2019, but it also included some items acquired earlier. For example, Ms. Simmons listed several pieces of jewelry acquired by her grandmother in 1950 that cost $7,000. (*Id.* at 98). All told, the cost of the items acquired before 2018 was $54,600 and the cost of items acquired in 2018 and 2019 was $130,152. (*See id.* at 98–107). Ms. Simmons testified that Mr. Davis bought her $52,050 worth of furniture, clothing, accessories, and so on, after they began dating in August 2018. (*See id.* at

---

have treated the line for "cost to repair or replace" as if it said "claim for the house," and the line for "actual cash value" as if it said "claim for the contents."

[3] Neither party has explained the reason for the difference between the amount claimed on Ms. Simmons' proof of loss form and the total amount of the items listed on her contents inventory.

11–19, 98–107). Of the $78,102 worth of items acquired in 2018 and 2019 that Mr. Davis did not buy for her, Ms. Simmons explained that she bought some herself, her sons bought some, and Mr. Davis occasionally gave her money. (Doc. 22-9 at 8, 22, 36).

In July 2020, Metropolitan denied Ms. Simmons' claim on the ground that inconsistencies between her bankruptcy petition and her claim showed that she had made misrepresentations to Metropolitan and that her claim was barred by judicial estoppel. (Doc. 22-11 at 2–4). Ms. Simmons then filed this lawsuit. (Doc. 1-1 at 7).

## II.  DISCUSSION

Ms. Simmons asserts claims for breach of contract and bad faith denial of her insurance claim. (Doc. 1-1 at 7–8). Metropolitan seeks summary judgment on (1) the breach of contract claim on the grounds that the inconsistencies between Ms. Simmons' bankruptcy petitions and insurance claim establish judicial estoppel and that she made material misrepresentations, and (2) the bad faith claim on the ground that it had an arguable, debatable reason to deny her claim. (Doc. 23).

### 1. Judicial Estoppel

Metropolitan contends that the equitable doctrine of judicial estoppel should bar Ms. Simmons' breach of contract claim because inconsistencies between the value of personal property she reported in her bankruptcy case ($3,300 in her initial

7

bankruptcy petition and $55,900 in her amended bankruptcy petition) and the value of the property in the contents inventory she submitted to Metropolitan ($184,902) shows that she was misleading the bankruptcy court and giving herself an unfair advantage over Metropolitan. (Doc. 23 at 11–14).

Ms. Simmons responds that application of the judicial estoppel doctrine is inappropriate because the bankruptcy court has not granted a discharge, so the bankruptcy case is not final, and Metropolitan could not be unfairly disadvantaged by Ms. Simmons' position in the bankruptcy case because Metropolitan was not a party to that case. (Doc. 26 at 16–17). Ms. Simmons also argues that the different values are justified because the amounts listed in the bankruptcy petition reflect the value a person may pay for a used item, but the values on the contents inventory reflect the cost to replace her personal property. (*Id.* at 19). Metropolitan replies that Ms. Simmons admitted she knew the bankruptcy petitions contained incorrect information, and has still not corrected the petition to reflect the amounts she claims from Metropolitan, showing her intent to defraud her creditors. (Doc. 27 at 5–6).

Judicial estoppel is a discretionary equitable doctrine created "to protect the integrity of the judicial process, by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001) (citation and quotation marks omitted); *see also Ex parte TitleMax of Ga., Inc.*, __ So. 3d __, 2021 WL 2024678, at *6 (Ala. May 21,

2021) ("Judicial estoppel applies to preclude a party from assuming a position in a legal proceeding that is clearly inconsistent with a position that party has previously asserted in a separate legal proceeding, such that judicial acceptance of the inconsistent position in the later proceeding would create the perception that either the first or the second court has been misled.").

Because this case is in federal court on diversity jurisdiction, the court must use Alabama's doctrine of judicial estoppel. *Original Appalachian Artworks, Inc. v. S. Diamond Assocs., Inc.*, 44 F.3d 925, 930 (11th Cir. 1995). The Alabama Supreme Court derived Alabama's doctrine of judicial estoppel from the United States Supreme Court's decision in *New Hampshire v. Maine*. *Ex parte First Ala. Bank*, 883 So. 2d 1236, 1246 (Ala. 2003), as modified on denial of reh'g (Nov. 21, 2003). Under that approach, "the circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle," but "several factors [are] informative in determining the applicability of the doctrine of judicial estoppel." *Id.* at 1244 (quotation marks and alteration omitted). Those factors are whether (1) the "party's later position [is] clearly inconsistent with its earlier position"; (2) the party was "successful in the prior proceeding so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or second court was misled"; and (3) the party asserting the inconsistent position would "derive an unfair

advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 1244–45 (citation and quotation marks omitted). The party asserting judicial estoppel bears the burden of establishing its applicability. *See Middleton v. Caterpillar Indus., Inc.*, 979 So. 2d 53, 65 (Ala. 2007).

The court does not find judicial estoppel to be appropriate in this case. The first factor to consider is whether Ms. Simmons has taken "clearly inconsistent" positions in her bankruptcy case and this case. In her initial bankruptcy petition, Ms. Simmons listed the "current value" of her personal property at $3,300—an amount she later agreed was "not right" (doc. 22-9 at 34)—and in her amended petition, she listed the "current value" of her personal property at $55,900. (Doc. 22-1 at 12; doc. 22-10 at 9). In her second proof of loss, she listed the "actual cash value" of her personal property as $180,411. (Doc. 22-5 at 2). The court agrees that the difference in values is striking, but the court cannot find that her positions are "*clearly* inconsistent." *See Ex parte First Ala. Bank*, 883 So. 2d at 1244. The bankruptcy petitions ask for "current value," which is not necessarily the same as either "actual cash value" or "replacement cost." It is not *clearly* inconsistent to describe the current value of an item as less than its actual cash value or replacement cost.

The next factor is whether the party was "successful in the prior proceeding so that judicial acceptance of an inconsistent position in a later proceeding would

10

create the perception that either the first or second court was misled." *Ex parte First Ala. Bank*, 883 So. 2d at 1244.  There is no evidence in the record about whether the bankruptcy court has confirmed Ms. Simmons' plan.  There is likewise no evidence in the record about whether the bankruptcy court has accepted Ms. Simmons' position about the "current value" of her personal property.  Finally, there is no evidence in the record that if Ms. Simmons were successful in her breach of contract claim, she would not amend her petition to reflect any award she receives, resulting in an amendment of the bankruptcy plan base.  As the summary judgment movant and the party seeking application of judicial estoppel, it is Metropolitan's burden to present evidence about those issues.  *See* Fed. R. Civ. P. 56(a).  And as the United States Supreme Court explained in *New Hampshire v. Maine*, "[a]bsent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations, and thus poses little threat to judicial integrity." 532 U.S. at 750–51 (citation and quotation marks).  Because the court cannot determine whether Ms. Simmons has been successful in her bankruptcy case, the court cannot find that her success risks inconsistent court determinations or threatens judicial integrity.

The final factor discussed by the parties in this case is whether the party asserting the inconsistent position would "derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Ex parte First Ala. Bank*,

11

883 So. 2d at 1244–45 (quotation marks omitted). Metropolitan contends that Ms. Simmons' inconsistent positions unfairly affected her creditors (doc. 23 at 14), but Ms. Simmons' creditors are not "the opposing party" in this case; Metropolitan is. Metropolitan also asserts that Ms. Simmons' inconsistent positions gives her an unfair advantage over it, but it offers no explanation of how that is so. (*See id.*). Again, this is insufficient to meet Metropolitan's burden of showing the applicability of judicial estoppel. The court will not grant summary judgment in Metropolitan's favor based on judicial estoppel.

2. Material Misrepresentations

Metropolitan contends that Ms. Simmons cannot establish a breach of the contract because she violated the concealment or fraud provision of the policy by making material misrepresentations about the value of her personal property on either her bankruptcy petitions or her insurance claim. (Doc. 23 at 15–19). Metropolitan further argues that Ms. Simmons' intent to deceive is undisputed because her misrepresentations were extravagant and she could not have purchased all of the items with her disposable income of $902.69 per month. (*Id.* at 19–25).

Under Alabama law, a party asserting a breach of contract claim must establish "(1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the defendant's nonperformance, and (4) damages." *State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293, 303 (Ala.

1999) (quotation marks omitted). The insurance policy in this case conditioned coverage of a loss on the claimant not "conceal[ing] or misrepresent[ing] any material fact or circumstance or mak[ing] any material false statement or engag[ing] in fraudulent conduct affecting any matter relating to this insurance or any loss for which coverage is sought, whether before or after a loss." (Doc. 22-2 at 40 ¶ 2) (emphases omitted). In Alabama, the insurer must establish that the misrepresentation was made "with actual intent to deceive as to a matter material to the insured's rights under the policy." Ala. Code § 27-14-28; *Ex parte State Farm Fire & Cas. Co.*, 523 So. 2d 119, 120 (Ala. 1988) ("[S]tatutory provisions respecting insurance are to be read into all insurance contracts subject to Alabama law . . . .").

As an initial matter, Ms. Simmons contends that the insurance policy's provision that her "bankruptcy . . . will not relieve [Metropolitan] of any obligation under this policy" (doc. 22-2 at 40 ¶ 7) (emphases omitted), means that Metropolitan must provide coverage (doc. 26 at 24–25). This argument borders on frivolous. It is clear that Metropolitan did not deny Ms. Simmons' claim because she filed for bankruptcy, but because it believed the inconsistencies between her bankruptcy petition and her proof of loss showed that she had made material misrepresentations.

However, Ms. Simmons goes on to argue that a jury must determine whether she made material misrepresentations with an intent to deceive. (Doc. 26 at 19–20, 25–26). The court finds that genuine disputes of material fact, including

Ms. Simmons' understanding of the different meanings of "current value," "actual cash value," and "cost to repair or replace," prevent the conclusion that a reasonable jury would have no choice but to find that Ms. Simmons made material misrepresentations with an intent to deceive Metropolitan. Accordingly, the court **DENIES** the motion for summary judgment with respect to Ms. Simmons' breach of contract claim.

### 3. Bad Faith

Metropolitan contends that it is entitled to summary judgment on Ms. Simmons' claim of bad faith refusal to pay because the discrepancies between the bankruptcy petition and the contents inventory gave Metropolitan an arguable or debatable reason to deny the claim. (Doc. 23 at 27–28).

Under Alabama law, a plaintiff alleging bad faith refusal to pay must prove (1) the defendant's breach of an insurance contract, (2) the defendant's intentional refusal to pay the insured's claim; (3) the absence of any reasonably legitimate or arguable reason for that refusal; and (4) the defendant's actual knowledge of the absence of any legitimate or arguable reason. *Nat'l Security Fire & Cas. Co. v. Bowen*, 417 So. 2d 179, 183 (Ala. 1982). If a jury question exists with respect to the plaintiff's breach of contract claim, the plaintiff's bad faith claim fails as a matter of law. *Payne v. Nationwide Mut. Ins. Co.*, 456 So. 2d 34, 36 (Ala. 1984) ("[T]he controlling issue in this case becomes this: Was the trial court in error in the earlier

tried contract action for submitting [the plaintiff's] contract claim to the jury? If there was any such factual issue, then . . . the trial court was correct in granting summary judgment for Nationwide in plaintiff's bad faith refusal claim."); *Nat'l Sav. Life Ins. Co. v. Dutton*, 419 So. 2d 1357, 1362 (Ala. 1982) ("[I]f the evidence produced by either side creates a fact issue with regard to the validity of the [breach of contract] claim and, thus, the legitimacy of the denial thereof, the [bad faith] tort claim must fail and should not be submitted to the jury.").

The evidence indisputably establishes that Metropolitan had at least an arguable reason to deny Ms. Simmons' claim based on the inconsistencies between her bankruptcy petitions and her insurance claim. *See Bowen*, 417 So. 2d at 183. Moreover, because Ms. Simmons is not entitled to judgment as a matter of law on her contract claim, under Alabama law, her bad faith claim fails. *See Payne*, 456 So. 2d at 36; *Dutton*, 419 So. 2d at 1362. Accordingly, the court **GRANTS** Metropolitan's motion for summary judgment on Ms. Simmons' bad faith claim.

### III. CONCLUSION

The court **DENIES** Metropolitan's motion for summary judgment on Ms. Simmons' breach of contract claim, but **GRANTS** the motion on the bad faith claim and **WILL ENTER SUMMARY JUDGMENT** in favor of Metropolitan and against Ms. Simmons on that claim.

The court will enter a separate partial judgment.

**DONE** and **ORDERED** this January 3, 2022.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE